UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |
|---|---|
| HOUSECANARY, INC. | Civ. Action No.: 5-18-CV-00519 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| QUICKEN LOANS INC., ONE REVERSE MORTGAGE, LLC, and IN-HOUSE REALTY, LLC, | **Jury Trial Demanded** |
| Defendants. | |

Plaintiff HouseCanary, Inc. by its undersigned counsel, hereby complains against Defendants Quicken Loans Inc., One Reverse Mortgage, LLC, and In-House Realty, LLC (collectively, "Defendants"), and alleges, as follows:

## INTRODUCTION

1.      Fast and accurate home valuations are commercially invaluable and extremely difficult to create.  Quicken Loans, Inc. – the largest mortgage lender and online mortgage lender in the United States – knew that in order to maintain its dominance in the real estate market it needed to have the fastest and most accurate home valuations possible.  Quicken Loans closed loans totaling $96 billion in 2016 and understood that having loan opportunities held up or missed because of slow or poor valuations is very costly for its business.  For example, in 2016, Quicken Loans affiliates estimated that one in ten Quicken Loans applications were suspended due to low appraisal value.

2.      Quicken Loans wanted access to the best and most accurate valuation models and technology to maintain its high-volume loan business and to maximize profits by increasing the speed and accuracy of its initial property valuations. Rather than spend the large amount of time and resources necessary to develop its own models, and know-how and data, Quicken Loans and others in its Family of Companies ("FOC") – Amrock Inc., ("Amrock"), formerly known as Title Source, Inc. or TSI, (referred to herein as "TSI/Amrock"), One Reverse Mortgage, LLC, and In-House Realty, LLC – chose to take a shortcut.

3.      The Quicken Loans FOC misappropriated HouseCanary's cutting-edge and highly accurate valuation technology and accompanying data to develop their own derivative analytics and software.

4.      In December 2013, TSI/Amrock, at the direction and on behalf of Quicken Loans, approached HouseCanary and signed a stringent Non-Disclosure Agreement ("NDA"). TSI/Amrock represented in the NDA that it had authority to bind Quicken Loans and its other affiliates to the terms of the contract.  (Defining parties to the agreement to include all affiliates and parties under common control: "'Party(ies)' are the Party-signatories to this Agreement and includes all Affiliates, employees and agents of that Party...").   The NDA prohibited TSI/Amrock, Quicken Loans, or any other TSI/Amrock affiliate from reverse engineering HouseCanary's models or the output of those models, including automated valuation models ("AVMs"), or otherwise using HouseCanary's confidential information to develop their own products. In particular, NDA section II(2)(A)(vi) required TSI/Amrock and Defendants:

> ***not to disassemble or decompile software, or otherwise attempt to reverse engineer*** the design and function of any of the Confidential Information, nor … ***develop,*** manufacture, produce, and/or distribute ***any software product or business derived from or which otherwise uses any of the Confidential Information.***

5.     Over the next year, representatives from TSI/Amrock and Quicken Loans met with HouseCanary to explore HouseCanary's technology, during which TSI/Amrock employees discussed a relationship on behalf of Quicken Loans and One Reverse Mortgage.  Various executives from Quicken Loans met in person with HouseCanary representatives in May 2014 and December 2014 for presentations related to their technology and services.

6.     In January 2015, HouseCanary entered into a Master Software License Agreement ("MSLA"), attached hereto as <u>Exhibit A</u>, with TSI/Amrock that gave TSI/Amrock a 120-day evaluation period and then the rights to use certain HouseCanary's appraisal software products for a fee. The MSLA incorporated by reference and amended the terms of the NDA – which bound all three Defendants – to extend the term of the NDA restrictions.  In addition, the MSLA provided for exclusive venue in San Antonio, Texas, in the event of breach.

7.     Over the next 10 months, TSI/Amrock and Quicken Loans learned all about HouseCanary's trade secret valuation technology, while discussing entering into a more expansive contract with HouseCanary that would provide Quicken Loans and TSI/Amrock with access to HouseCanary's valuation models, data and other analytics. As of September 2015, HouseCanary was still in negotiations with TSI/Amrock and Quicken Loans for a contract by which they would *both* get access to HouseCanary's technology.  TSI/Amrock and Quicken Loans wanted unlimited rights to use HouseCanary's data and models, including rights to develop their own products, but HouseCanary made crystal clear that an absolute precondition to any agreement was a promise that TSI/Amrock and Quicken Loans would not warehouse data, reverse engineer, or use HouseCanary's data and models to develop derivative products.

8.     Ultimately, HouseCanary executed a much more limited agreement with TSI/Amrock in November 2015 (the "Amended MSLA") attached hereto as <u>Exhibit B</u>.  Like the

original MSLA, the Amended MSLA incorporated the restrictions of the original NDA, which bound all of the Defendants.  Quicken Loans was a named beneficiary of the agreement – it had the right to  access to HouseCanary's automated valuation models and data for the purpose of allowing Quicken Loans bankers to access them during initial discussions with potential loan customers.  One Reverse Mortgage also received limited rights under the agreement.  The Amended MSLA contained additional restrictions protecting HouseCanary's valuation models, data and other confidential information from being stored or used in any way to create derivative products.

9.      The Amended MSLA specifically barred use of any of HouseCanary's data to create any database or derivative products.  TSI/Amrock also was strictly forbidden from reverse engineering or otherwise utilizing any analytics it obtained from HouseCanary.

> **Unless agreed to in writing, Licensee may not (a) use any Appraisal, analytics, metrics, reports or any Data for any purpose other than as expressly set forth herein, (b) deliver or display any Appraisal, analytics, metrics, reports or any Data to the general public via the Internet or other electronic or print media, including email or direct mail, or otherwise use any Appraisal or other analytics, metrics, reports or Data for advertising or promotional campaigns, (c) or resell, relicense, or redistribute any analytics, metrics, reports or Data in whole or in part or use any analytics, metrics, reports or Data, or any portion thereof, to create any database or derivative products. Licensee may not decompile, disassemble, scrape, decode, reverse translate, or reverse engineer any analytics, metrics or reports or any component or portion thereof.**

10.      Notably, during negotiations, counsel for TSI/Amrock and Quicken attempted to remove the provision in the contract which stated that TSI/Amrock could not "resell, relicense, or redistribute any analytics, metrics, reports or Data in whole or in part or use any analytics, metrics, reports or Data, or any portion thereof, to create any database or derivative products [*or*] decompile, disassemble, scrape, decode, reverse translate, or reverse engineer any analytics, metrics or reports or any component or portion thereof."  HouseCanary insisted on that provision remaining if the agreement was to be signed and the provision remained in the signed agreement.

11.     With the contract signed, and HouseCanary lulled into a false sense of security by the misrepresentations regarding TSI/Amrock and Quicken Loans' intended uses of HouseCanary's intellectual property, TSI/Amrock and Quicken Loans demanded that HouseCanary share its most valuable secrets and insights into how its models and software were created – data dictionaries, modeling, and algorithms – for the purpose of improving the Quicken Loans lending process.

12.     In fact, TSI/Amrock was using this information for the very thing it had promised HouseCanary it would not do – developing its own competing valuation models and amassing a data warehouse to train those models which could be used for Quicken Loans and others in the FOC.

13.     Once Quicken Loans and TSI/Amrock had what they wanted, in late March, 2016, TSI/Amrock  attempted to unilaterally re-write the contract and avoid paying HouseCanary – including surreptitiously removing once again the provision preventing databasing or creating derivative products and trying to provide broader access to all of TSI/Amrock's affiliates.  HouseCanary refused.  It was only after TSI/Amrock preemptively sued HouseCanary in state district court in Bexar County, Texas (the "State Court Lawsuit"), located in the city of San Antonio, in an apparent effort to force a settlement that would enable TSI/Amrock to freely use HouseCanary's intellectual property, that HouseCanary uncovered the truth behind TSI/Amrock's behavior.

14.     Specifically, discovery in the case TSI/Amrock initiated revealed that TSI/Amrock, Quicken Loans and other entities in the Quicken Loans FOC had been working to develop competing products to HouseCanary throughout the relationship and had been using HouseCanary's intellectual property to do so.  For example, in March 2016, Quicken Loans'

banking team was asking to access the HouseCanary AVM data stored in TSI/Amrock's *modeling* server. This data was shared with Quicken Loans with TSI/Amrock's modeler noting the "magnitude of the data."

15.     In June 2017, the Court in the pending Bexar County case ordered TSI/Amrock to produce documents to HouseCanary regarding its development of an internal AVM – which TSI/Amrock had previously denied developing.   The documents produced revealed that TSI/Amrock had secretly developed for use by itself and Quicken its own AVM, similarity score, and complexity score using HouseCanary's technology.

16.     HouseCanary was forced to file additional motions to compel through the fall of 2017, resulting in additional documents being produced through the end of the year and weeks before trial regarding TSI/Amrock's and Quicken Loans' true intentions with respect to HouseCanary's technology.

17.     Following a 7-week trial in Bexar County, on March 14, 2018, the jury found unanimously:

- TSI/Amrock willfully misappropriated HouseCanary's trade secrets including its valuation models, data dictionary, data compilations, similarity score and complexity score used for real estate valuation;

- TSI/Amrock willfully defrauded HouseCanary;

- TSI/Amrock breached its nondisclosure agreement with HouseCanary; and

- TSI/Amrock breached its other agreements that limited its use of HouseCanary's data and technology.

18.     The jury also unanimously found that HouseCanary had *complied* with *all* agreements between the parties.

19.     During discovery, TSI/Amrock concealed from HouseCanary Quicken Loans' role in stealing HouseCanary's trade secrets.  TSI/Amrock hid from HouseCanary the fact that TSI/Amrock was developing its own AVM on behalf of Quicken Loans and the FOC. TSI/Amrock's witnesses lied under oath by repeatedly denying that TSI/Amrock was developing its own AVM even though TSI/Amrock had already announced internally the release of its own AVM, which Quicken Loans employees were using.

20.     TSI/Amrock also hid the fact that Quicken Loans had absorbed the entire TSI/Amrock data science team in 2016 and that the key employees who misappropriated HouseCanary's technology became (and are now) Quicken Loans employees.

21.     Some of these facts even were learned during the TSI/Amrock trial.  At trial, TSI/Amrock's CEO Jeff Eisenshtadt admitted that his company's AVM – which the jury found was developed using the misappropriated HouseCanary trade secrets – was available to Quicken Loans and "being used every day to run and test against other appraisal data."  He further acknowledged that TSI/Amrock's AVM was being used internally within the FOC.

22.     Quicken Loans and its affiliates cannot be permitted to use valuation models which have been found to be based on stolen technology from HouseCanary.

## **PARTIES**

23.     Plaintiff HouseCanary is a Delaware corporation with its principal place of business in San Antonio, Texas.

24.     At the time of HouseCanary's founding, co-founder and Chief of Research Chris Stroud was a doctoral candidate at the University of Texas San Antonio's Department of Management Science and Statistics.  Mr. Stroud left the doctoral program in 2014 to grow HouseCanary, but continued to work and reside in San Antonio.  The primary trade secrets at

issue in this litigation—HouseCanary's AVMs, its similarity score, its data dictionary, and its data compilations—were developed by Mr. Stroud and his research team in San Antonio, and HouseCanary continues to develop its models, data, and analytics in San Antonio.  Although HouseCanary has continued to grow and has hired additional employees with statistical backgrounds in its San Francisco and Boulder offices, HouseCanary's Chief of Research and other members of its research team work in San Antonio.   San Antonio was where HouseCanary's models and analytics were developed, and where the trade secrets at issue remain.

25.     The January 29, 2015 Master Software License Agreement between HouseCanary and TSI/Amrock (to which Quicken Loans and One Reverse Mortgage were beneficiaries) specifies that Texas law will apply to the agreement and identifies the state and federal courts of San Antonio, Texas, as the  proper forum for any disputes:

> This agreement shall be governed by and interpreted in accordance with the laws of the State of Texas, without regard to the principles of conflicts of law. The Parties agree to submit to the sole and exclusive jurisdiction and venue of the state and Federal courts of the State of Texas situated in San Antonio, Texas.  Each Party consents to the exercise of personal jurisdiction by such court and waives any right to plead, claim or allege that San Antonio, Texas is an inconvenient forum.

The parties did not amend the choice and law and venue provisions when they amended the agreement in November 2015.

26.     Defendant Quicken Loans is a Michigan corporation with its principal place of business in Wayne County, Michigan. Quicken Loans is wholly owned by Rock Holdings, Inc. ("Rock Holdings").

27.     Defendant One Reverse Mortgage is a Delaware corporation, with its principal place of business located in San Diego, California.  One Reverse Mortgage is wholly owned by Rock Holdings.

28.     Defendant In-House Realty is a Michigan corporation, with its principal place of business located in Wayne County, Michigan. In-House Realty is wholly owned by Rock Holdings.

## JURISDICTION AND VENUE

29.     This Court has personal jurisdiction over Defendants pursuant to the MSLA (Exhibit A) and Amended MSLA (Exhibit B), of which Quicken Loans and One Reverse Mortgage are beneficiaries, and which bound all Defendants to nondisclosure restrictions incorporated into the Agreement, and pursuant to which all Defendants caused harm to HouseCanary in this state.  The Amended MSLA contains a venue clause mandating Texas as the venue, and stating that it is a convenient place for resolution of claims arising thereunder. Furthermore, Defendants do significant business in Texas, including business using HouseCanary's trade secrets.

30.     Both Quicken Loans and One Reverse Mortgage are licensed and authorized to make residential mortgage loans in Texas.

31.     Quicken Loans is the second-most active mortgage lender in San Antonio.[1] In 2017, it underwrote 2,500 loans in San Antonio and originated approximately 200 loans in San Antonio.[2]

---

[1] Kristen Mosbrucker, *Biggest Lender: Wave of San Antonio Mortgage Refinancing Over for Now*, San Antonio Business Journal, May 10, 2018.
[2] *Id*; Kristen Mosbrucker, *San Antonio Mortgage Loan Volume Dipped in 2017*, San Antonio Business Journal, May 2, 2018.

32.    Quicken Loans has availed itself of courts in Texas, including by affirmatively filing lawsuits in Texas state courts.

33.    Jurisdiction exists over both federal and state law claims under 28 U.S.C. 1331 and 1367(a).

34.    Venue in this district is proper under 28 U.S.C. 1391 and the contracts at issue in this case.

## GENERAL ALLEGATIONS

35.    Quicken Loans is the largest mortgage lender and online mortgage lender in the United States and a member of the Quicken Loans FOC.  In-House Realty is a member of the Quicken Loans FOC and partners with Quicken Loans in the real estate space to provide real estate referrals and property searches.  One Reverse Mortgage, also a member of the Quicken Loans FOC, is the largest retail reverse mortgage lender in America.  Amrock, formerly known as Title Source, Inc. is Quicken Loans' captive appraisal and title business, and is also a member of the Quicken Loans FOC.

36.    Members of the FOC operate under a shared services model wherein they pay one another fair market value for services provided by one another.  Relevant here, valuation services and products provided by third parties pursuant to agreements with TSI/Amrock are paid by Quicken Loans, and the FOC plans a collective projected spend for valuation services.  In addition, the FOC shares legal and accounting services, in a manner that disregards corporate distinctions between the companies.

37.    Collectively, the Defendants have a dominant position in the market for home loans and use that to increase their scope and reach.  For example, Quicken Loans introduced its eponymous "Rocket Mortgage" in 2016 – touting its ability to complete the mortgage application

process and provide consumers a mortgage within minutes. In 2017, Quicken Loans and In-House Realty announced a plan to build an "end-to-end homebuying experience," thus further solidifying the FOC's dominance in the homebuying market.[3]

38.     As part of Quicken Loans' and its family of companies' aggressive plan to provide consumers with nearly instantaneous loans, it realized it needed more advanced appraisal capabilities including more accurate home valuation technology.

39.     Rather than investing its own time and money to build these capabilities, Quicken Loans went another route: it took that technology from HouseCanary – a startup that had worked aggressively to develop innovative and sophisticated technology in this field.

40.     Specifically, Quicken Loans directed its captive appraisal and title business, TSI/Amrock, to form a business relationship with HouseCanary.  The ostensible purpose of this relationship would be to license HouseCanary's technology and data for a fee pursuant to a contractual relationship.  TSI/Amrock did enter into various agreements with HouseCanary relating to HouseCanary's data and technology, but these agreements contained stringent limitations on the use of HouseCanary's data and technology by TSI/Amrock, and by any entity related to TSI/Amrock, such as Quicken Loans and One Reverse Mortgage.  The FOC's true purposes in having TSI/Amrock enter into agreements with HouseCanary were revealed to be very different than a restricted license.

41.     Quicken Loans Chief Executive Officer at the time, Bill Emerson, initiated the contact by supplying TSI/Amrock executive Jordan Petkovski with HouseCanary co-founder Jeremy Sicklick's contact information.  In his initial email to HouseCanary on December 3, 2013, Mr. Petkovski made sure that HouseCanary understood Quicken Loans' interest and

---

[3] *Quicken Loans' In-House Realty Wading Further Into Real Estate* (June 20, 2017), https://www.inman.com/2017/06/20/quicken-loans-wading-further-into-real-estate.

involvement in reaching out to HouseCanary by entitling his email to Mr. Petkovski, "Bill Emerson sent your info to me."   Mr. Sicklick and Mr. Petkovski agreed to discuss how HouseCanary's work could apply to "Quicken Loans and Title Source."

42.     Within three days, HouseCanary had agreed to a Non-Disclosure Agreement binding TSI/Amrock, Quicken Loans, and the other members of the FOC.   Specifically, TSI/Amrock and HouseCanary "acknowledge[d] and agree[d] that they have the authority to enter into this agreement and hereby bind their respective Party and Party Affiliates who obtain Confidential Information."

43.     For the next year, the parties worked together.   At least one early meeting was attended by Quicken Loans. The result was a draft license agreement listing Quicken Loans/Title Source as the Licensee, which Mr. Petkovski referred to as the "QL Master Software License Agreement."

44.     In January 2015, at the direction of Quicken Loans' top employees, TSI/Amrock established a contractual relationship with HouseCanary.   Under a Master Software License Agreement (the "MSLA"), HouseCanary agreed to license to TSI/Amrock the use of its proprietary appraisal software called "HouseCanary Appraiser."   TSI/Amrock and HouseCanary entered this relationship subject to the existing NDA, which prohibited TSI/Amrock and any agents or Affiliates (including Defendants) from disclosing or using Confidential Information for a purpose other than the stated Purpose of the Disclosure and would not disassemble, reverse engineer, or "develop, manufacture, produce, and/or distribute any software product or business system device from or which otherwise uses any … Confidential Information."   The NDA was expressly incorporated into all subsequent agreements between HouseCanary and TSI/Amrock,

including a provision that subjected Quicken Loans and all other affiliates within the FOC to its terms if they received any data from HouseCanary.

45.     TSI/Amrock immediately saw the immense value in HouseCanary's technology and data compilations.  Just weeks into the evaluation period, TSI/Amrock agreed with Quicken Loans that they should approach HouseCanary about expanding the scope of the relationship.

46.     Quicken Loans was a full participant in evaluating HouseCanary's proprietary data and models – its trade secrets. HouseCanary, TSI/Amrock, and Quicken Loans had a set of meetings across "QL and TSI."  Quicken Loans CEO Bill Emerson and other Quicken Loans top executives were invited to strategic meetings with HouseCanary.  TSI/Amrock wanted Quicken Loans executives at the meeting because "this initiative would be strategic across multiple business units within [TSI/Amrock] as well as potentially the FOC."  TSI/Amrock's Vice President of Business Development David Majewski told Bill Banfield, the Executive Vice President of Capital Markets for Quicken Loans that he believed Quicken Loans' Capital Markets could leverage the HouseCanary relationship with investors, Fannie Mae, and Freddie Mac.

47.     Quicken Loans and the FOC spent money on their behalf (not just TSI/Amrock's) for the evaluation of House Canary data and to determine how it might assist Quicken Loan services.

48.     However, Quicken Loans decided at the last minute not to be a party to the license agreement.  Defendants opted instead to gain access to HouseCanary's intellectual property through TSI/Amrock as a conduit.  But the license agreement TSI/Amrock signed contained significant use restrictions and explicitly restricted access to TSI/Amrock and, on a limited basis, Quicken Loans and One Reverse Mortgage.  In-House Realty had no rights under the contract.

Had the agreement not contained such limitations, HouseCanary would have charged TSI/Amrock $10 million per year. However, HouseCanary accepted only $5 million per year because TSI/Amrock agreed to these limitations.

49.     Notwithstanding Quicken Loans' decision to forfeit the right to fully access HouseCanary's intellectual property, Quicken Loans remained a vocal participant in the negotiations, and, internally, made clear its intent to broadly use HouseCanary's products. For example, just nine days before HouseCanary and TSI/Amrock executed the Amended Master Software License Agreement (the "Amended MSLA"), Gjoe Biblekaj of Quicken Loans asked "What is the anticipated date [] where we can start using HouseCanary's metrics." In fact, the "Compinator" product that was part of the HouseCanary project, while paid for by TSI/Amrock, was used entirely by Quicken Loans, and was the product that HouseCanary's AVM Value was intended to replace.

50.     During all periods where the FOC was evaluating HouseCanary's confidential information, Defendants understood that they were working with HouseCanary's confidential information subject to the restrictions specified in the NDA as incorporated into and amended by the Amended MSLA. As Mr. Petkovski testified, "I am certain that, when it came to discussing all things HouseCanary with anybody that was involved from the project team, I made mention of the fact that this was very much a confidential initiative. I don't recall having specific one-on-one interactions with everybody that was involved. But, in a group setting, I'm certain that that's something I would have disclosed because it was standard operating procedure for us."

51.     Equally important – and equally flouted by Defendants – were the limits on how *any* member of the FOC, including TSI/Amrock, could use HouseCanary's software and data provided pursuant to the limited license agreement that was ultimately signed. Prior to signing

the agreement, TSI/Amrock had internal meetings recognizing that, under the $5 million version of the Agreement, they had no right to simply pull a million records to warehouse.

52.     Despite the FOC's clear recognition of the restrictions on uses and beneficiaries under the contemplated license agreement, Defendants intended all along to exploit TSI/Amrock's relationship with HouseCanary to gain access to HouseCanary's real estate data, analytics, and appraisal software so that they could wrongfully take and appropriate that technology, while trying to pass it off as though TSI/Amrock had independently developed the same products.  As Bryan Wang, who serves as the director of data science for Quicken Loans *and* Title Source put it upon hearing that HouseCanary was coming to TSI/Amrock and Quicken Loans in May 2015 to give a presentation, "I am more interested in knowing what data they have.  It would be great if they could give this group a demo regarding their data."

53.     Prior to signing the Amended MSLA, TSI/Amrock discussed internally the need to have language in the contract in case they got "cold feet" and also to discuss what to do when they wanted to do bigger things with HouseCanary's data.

54.     The Amended MSLA, executed in November 2015, reflected none of the FOC's grand plans.  To the contrary, it granted Quicken Loans and One Reverse Mortgage limited access to a subset of data contained in HouseCanary's Value Report – Quicken Loans could use these data and analytics *solely* for its internal use.  In-House Realty had no rights under the Amended MSA to use or even receive HouseCanary's Value Report or the data and analytics contained therein.

55.     Even that internal use was limited by "Additional Terms and Conditions." Specifically, the contract incorporated the NDA, which strictly forbade reverse engineering or

other uses of the data by TSI/Amrock, and certainly by Quicken Loans and One Reverse Mortgage, who had limited rights to use and added further explicit restrictions:

> **Unless agreed to in writing, Licensee may not (a) use any Appraisal, analytics, metrics, reports or any Data for any purpose other than as expressly set forth herein, (b) deliver or display any Appraisal, analytics, metrics, reports or any Data to the general public via the Internet or other electronic or print media, including email or direct mail, or otherwise use any Appraisal or other analytics, metrics, reports or Data for advertising or promotional campaigns, (c) or resell, relicense, or redistribute any analytics, metrics, reports or Data in whole or in part or use any analytics, metrics, reports or Data, or any portion thereof, to create any database or derivative products. Licensee may not decompile, disassemble, scrape, decode, reverse translate, or reverse engineer any analytics, metrics or reports or any component or portion thereof.**

56.     Instead of utilizing HouseCanary's reports and data as permitted by the Amended MSLA, Quicken Loans decided it wanted to bring this highly valuable and critical technology "In-House."   Working with its affiliates TSI/Amrock and In-House Realty, Quicken Loans devised a plan to appropriate HouseCanary's valuation technology and use HouseCanary's data to machine train its own undeveloped technology.

57.     In the months that followed, Quicken Loans and its affiliate TSI/Amrock worked hand-in-hand with HouseCanary on the implementation of an appraiser application for use by TSI/Amrock appraisers, giving Quicken and TSI/Amrock direct insight into HouseCanary's technology and development. As TSI/Amrock put it, the initial meeting after the Amended MSLA was signed was "a two-day session to walk through the House Canary solution and what it means for [TSI/Amrock] & QL."   HouseCanary – acting in reliance on the strictures of the NDA, as well as oral representations from TSI/Amrock that it was not in the business of developing its own internal valuation products – provided TSI/Amrock with data dictionaries, detailed information about its proprietary appraisal models, and other highly confidential

information.  In addition, TSI/Amrock began generating tens of thousands of HouseCanary's Value Reports as soon as those reports were provided under the Amended MSLA and received millions of underlying data points. TSI/Amrock continued to download thousands of those Value Reports even after it terminated the Amended MSLA.  TSI/Amrock provided these Value Reports to Quicken Loans *and* In-House Realty, which was not entitled to receive access to these Value Reports under the Amended MSA.

58.    In 2016, Quicken Loans and In-House Realty held additional meetings with HouseCanary, under the guise of wanting to enter into separate agreements whereby Quicken Loans would have broader rights and In-House Realty would have rights to access HouseCanary's data and valuation models.

59.    Despite Quicken Loans and TSI/Amrock testing and deploying HouseCanary's products, giving them favorable reviews and internally touting their capabilities and value, TSI/Amrock abruptly brought a declaratory judgment action against HouseCanary on April 12, 2016,[4] and terminated the contract one week later.  By refusing to pay HouseCanary, Quicken Loans and TSI/Amrock were attempting to deprive the startup of moneys while they developed their own product.

60.    There was a reason behind the sudden termination of HouseCanary that had nothing to do with any purported "failure" by HouseCanary to perform its obligations: Quicken Loans had gathered sufficient appraisal and valuation data, technological insight, and information on software appraisal analytics from HouseCanary through its affiliate TSI/Amrock to enable it to achieve its longstanding goal – carefully hidden from HouseCanary – to launch its own automated valuation model and appraisal technology.  In fact, Quicken Loans and

---

[4] The lawsuit Amrock filed against HouseCanary is *Title Source, Inc. v HouseCanary, Inc.,* No. 2016CI06300, Bexar Country, Texas, 73rd Judicial District.

TSI/Amrock starved HouseCanary of cash by intentionally failing to make required payments and tried to get HouseCanary to agree to an after-the-fact contract amendment that would have excused Quicken Loans' and TSI/Amrock's misappropriation of HouseCanary's data, expertise, and analytics.

61.     In September 2016, just months after TSI/Amrock abruptly and unlawfully terminated the License Agreement with HouseCanary pursuant to which it had received HouseCanary's highly valuable intellectual property, TSI/Amrock announced at a Quicken Loans technology conference attended by the Quicken Loans FOC that TSI/Amrock had developed its own internal AVM for use by the FOC and, eventually to be used by the public. In particular, this purported "internal" AVM would be used by Quicken Loans bankers, In-House Realty agents, and TSI/Amrock Appraisers.  TSI/Amrock misled HouseCanary in its discovery responses, claiming that no such AVM existed, until HouseCanary independently located a copy of an internal Quicken Loans conference presentation describing the AVM.

62.     TSI/Amrock's efforts to build its own valuation model came from a data science team which in November 2016, was absorbed by Quicken Loans.  Quicken Loans' "data science" teams (the teams responsible for developing models like the AVM) came from TSI/Amrock – the team that had worked directly with HouseCanary and had gotten access to all of HouseCanary's technology and which continued working on developing an internal AVM and other related products throughout 2016, using HouseCanary's data and analytics.

63.     For example, Claude Wang, a "Data Modeler" at TSI/Amrock, moved over to Quicken Loans in November 2016, when TSI/Amrock officially merged its data science team with Quicken Loans.  Mr. Wang's LinkedIn page states that he worked as a data scientist at TSI/Amrock until March 2017, when he became an employee of Quicken Loans because of a

"[p]osition change to Data Modeler at Quicken Loans in Nov 2016 due to merge of two data science teams at TSI/Amrock and Quicken Loans.  Both companies are the subsidiaries of Rock Holdings Inc."  Also, on this data science team was a modeler named Tianqi "Ryan" Yang, who was the data modeler assigned to the HouseCanary project and, specifically, testing and evaluating HouseCanary' data and tracking the inputs for its proprietary AVM and related valuation models.

64.    In October 2017, Quicken Loans announced that its mortgage services division had launched an automated valuation tool, QL Property Hub, which it boasted "uses multiple machine learning algorithms to present property values using property details, recent comparable sales data and an interactive map with street level details."[5]

65.    In the middle of the trial it initiated against HouseCanary, TSI/Amrock (at the time TSI) announced that it was rebranding itself as Amrock, Inc. and becoming a "leading-edge provider of Fin-Tech services."  Such fin-tech services include offering AVM's and pricing models.  Amrock's biggest client is Quicken Loans.  The AVM that TSI/Amrock announced in October 2016 that it had developed is currently being used daily among the FOC, including Quicken Loans.

66.    Quicken Loans too has continued to rebrand itself as "not really in the mortgage business" but in the "data acquisition business."  According to Quicken Loans' Founder and Chairman Dan Gilbert, "We acquire data, we curate it and we move it, That's all we do."[6]  What

---

[5] *See* Quicken Loans Press Room (Oct. 6, 2017), http://www.quickenloans.com/press-room/2017/10/06/quicken-loans-mortgage-services-creates-exclusive-revolutionary-home-valuation-tool-partner-banks-brokers-credit-unions.
[6] Chad Livengood, *Gilbert: 'We're not really in the mortgage business'*, Crain's Detroit Business (Apr. 17, 2018), http://www.crainsdetroit.com/article/20180417/news/658381/gilbert-were-not-really-in-the-mortgage-business.

Mr. Gilbert omits is that Amrock and Defendants are not *lawfully* acquiring data, and they are not "curating" that data themselves.

67.     Contrary to Quicken Loans' claim that it had "created" its home valuation tool, this technology was lifted from the hard work and technological insight of HouseCanary.

## SPECIFIC ALLEGATIONS

### A.     HouseCanary Brings Innovation to the Appraisal Industry

68.     HouseCanary is a highly innovative technology company. Recognizing that the housing bubble that led to the Great Recession was caused, in part, by improper valuations, inaccurate market forecasts, and incorrect information, HouseCanary honed in on technology to enhance information, valuation techniques, and market forecasts to the residential real estate market. From the outset, HouseCanary, and the proprietary software and data it developed and compiled, garnered the respect and praise of investors and players in the appraisal industry – including TSI/Amrock and Quicken Loans. As set forth in greater detail below, HouseCanary has developed and owns numerous trade secrets, including highly valuable proprietary software, algorithms, models, data, reports, forms, data sources, knowhow, techniques, and methods relating to various aspects of real estate valuation and other areas.

### B.     TSI/Amrock and Quicken Loans Induce HouseCanary to Share Its Intellectual Property

69.     In 2013, Bill Emerson, the Vice Chairman of Quicken Loans and Rock Holdings (Quicken Loans' parent company), encouraged TSI/Amrock to contact HouseCanary and reach an agreement to license HouseCanary's appraisal products for use by Quicken Loans and TSI/Amrock.

70.     The first thing TSI/Amrock and HouseCanary did was execute a Non-Disclosure Agreement ("NDA") so the parties could exchange confidential information.  Under the NDA,

TSI/Amrock had to agree that it would "*not use the Confidential Information for a purpose other than for the stated Purpose of the Disclosure; and will not copy such information for a purpose other than for the stated Purpose of the Disclosure*." It further required TSI/Amrock "*not to disassemble or decompile software, or otherwise attempt to reverse engineer the design and function of any of the Confidential Information, nor ... develop, manufacture, produce, and/or distribute any software product or business derived from or which otherwise uses any of the Confidential Information*."

71.     These strictures extended to TSI/Amrock's agents and affiliated parents and subsidiaries to the extent they received any Confidential Information. Specifically, the NDA applies to "Affiliates, employees and agents of that Party."  The term "Affiliate" is defined to include "parents, subsidiaries, that directly or indirectly, control, is/are controlled by, or are under common control with a Party." The NDA provides that the signatories, by entering into the NDA bind any "Party Affiliates who obtain Confidential Information."  Quicken Loans and One Reverse Mortgage are expressly named as "Affiliates" in the Amended Master Software License Agreement between HouseCanary and TSI/Amrock.  Thus, any information received by Quicken Loans – either by direct dealings with HouseCanary or through TSI/Amrock – was subject to limitations on use and confidentiality.

72.     TSI/Amrock entered into a Master Software License Agreement with HouseCanary on January 29, 2015 (the "MSLA").  The MSLA gave TSI/Amrock a license to the HouseCanary Appraiser software—mobile and web-based software that delivered HouseCanary's data, analytics, and estimated home values to home appraisers in the field. Under the MSLA, TSI/Amrock was entitled to evaluate HouseCanary's proprietary appraisal software—free of charge—for a period of 120 days, and to terminate the evaluation period in its

sole discretion.  The purpose of the MSLA was to give TSI/Amrock the opportunity to evaluate the Appraiser application.  The MSLA explicitly incorporated the terms of the NDA.

73.     Just a month after executing the MSLA, in February 2015, TSI/Amrock, at the encouragement of Quicken Loans high-ranking employees, approached HouseCanary about gaining greater access to HouseCanary's software and products through an expanded licensing agreement.  In late February 2015, HouseCanary, Quicken Loans and TSI/Amrock had a series of meetings to discuss the many additional opportunities that HouseCanary could offer.

74.     At the same time, internally, TSI/Amrock's top executives were directing their data science team to begin developing an internal automated-valuation model for the FOC – exactly the product that TSI/Amrock was negotiating with HouseCanary to receive, on the condition that TSI/Amrock warranted it would not reverse engineer the product, and was not developing any competing products.

75.     In mid-2015, HouseCanary and TSI/Amrock were negotiating an amended license agreement that would include the Appraiser Application – the subject of the original MSLA – as well as HouseCanary's proprietary collections of real estate data and analytics. It also included access, subject to heavy restrictions, to HouseCanary's Value Report and the proprietary data points that underlie it including a similarity score for comparable properties.

76.     Jay Farner, Quicken Loans' CEO, and Sam Vida, In-House Realty's president, among other employees of Defendants, participated in these meetings with HouseCanary where HouseCanary presented its products and offerings.  For example:

- March 17, 2015: Meeting with Quicken Loans employees for HouseCanary to "get a better understanding of Quicken's lender guidelines so that we may implement them in our application."

- May 13, 2015: TSI/Amrock V.P. of Business Development, David Majewski reaches out to Quicken Loans about "Bob, Bill [Banfield], and Jay [Farner]'s

availability" with HouseCanary, "which TSI has engaged for appraisal *and 'big' data services*."   Mr. Majewski urged that both Bill Emerson and Jay Farner should attend because of the importance of the initiative "within TSI/QL" and "potentially the FOC."

- July 2015: Quicken Loans provided feedback – through TSI/Amrock's David Majewski -- to HouseCanary on proposed models for an agreement for TSI. Quicken Loans and the FOC.

77.     As Quicken Loans and TSI/Amrock internally evaluated what products they needed from HouseCanary, they considered the products used across the FOC – not just within TSI/Amrock.  The numbers were pulled by Quicken Loans' accounting employees.  An internal email noted that Quicken Loans was looking to process 500,000-800,000 records.

78.     The original proposal for a revised license agreement provided for Quicken Loans *and* TSI/Amrock to have access to HouseCanary's Appraiser Application and Value Report. However, TSI/Amrock later informed HouseCanary that it did not want the contract to cover Quicken Loans – it wanted to negotiate for TSI/Amrock alone to have the full access to the software.

79.     TSI/Amrock and HouseCanary finalized the amendment to the MSLA ("the Amended MSLA"), and executed it on November 11, 2015.  The MSLA provided TSI/Amrock with access to two central products – the HouseCanary Appraiser Application and the HouseCanary Value Report.

80.     The Amended MSLA did not provide Defendants with any direct rights.  Rather, it authorized TSI/Amrock to provide Quicken Loans and One Reverse Mortgage with access to certain clearly-delineated data and analytics set forth in the MSLA, for "internal purposes only." In-House Realty had no rights under the Amended MSLA, through TSI/Amrock or otherwise.

81.     Nonetheless, the FOC viewed the HouseCanary agreement as one that would benefit TSI/Amrock, Quicken Loans, In-House Realty, and One Reverse Mortgage. Less than

two weeks after the agreement was signed, TSI/Amrock organized a meeting with Quicken Loans and In-House Realty stakeholders "to discuss HouseCanary." A December 2015 presentation prepared by TSI/Amrock on "how our partnership with HouseCanary will be leveraged to improve our operations" was addressed to all four companies.

82.     Throughout the negotiations beginning in early 2015, HouseCanary sought and received assurance that TSI/Amrock and Quicken Loans were not developing their own AVM, similarity score model, complexity score model, or any other competing products with HouseCanary's offerings – in other words, they were not seeking access to HouseCanary's data, analytics and software for purposes of developing competing products.

83.     In addition to these oral assurances, the Amended MSLA incorporates the terms of the NDA, and adds even stricter protections for HouseCanary's Confidential Information. The Amended MSLA states expressly that TSI/Amrock must not: "*use any analytics, metrics, reports or Data, or any portion thereof, to create any database or derivative products … [or] decompile, disassemble, scrape, decode, reverse translate, or reverse engineer any* analytics, metrics or reports or any component or portion thereof." This provision strictly limits the uses for which TSI/Amrock was entitled to provide HouseCanary's Licensed Software to its Affiliates Quicken Loans and One Reverse Mortgage under the Amended MLSA. Furthermore, any Affiliates were explicitly subject to the requirements set forth in the NDA regarding permissible uses of HouseCanary Confidential Information.

84.     But TSI/Amrock and Quicken Loans *always, before, during and after executing the agreements with HouseCanary,* intended to amass HouseCanary's data, and use its proprietary analytics to develop their own products for the benefit of the FOC.

COMPLAINT

85.    For example, even before January 2015, when HouseCanary and TSI/Amrock signed the *first* MSLA, TSI/Amrock and Quicken Loans' data science teams were working to develop the very products it was licensing from HouseCanary.

86.    Various internal TSI/Amrock presentations referenced the importance of TSI/Amrock developing an AVM for the entire FOCs, especially Quicken Loan bankers.

87.    When the TSI/Amrock AVM was launched, it was announced to the combined "TS-QL (Title Source-Quicken Loans)" data science team.

88.    Sam Vida, In-House Realty's President, and Jennifer Madden, In-House Realty's Head of Business Development, participated in evaluating HouseCanary's offerings in early 2015, in connection with a stated goal of "aggregating all of the data in a single UI/stand-alone platform."  High-level employees at Quicken Loans were also involved in these conversations.

89.    At all times, Quicken Loans exercised authority and control over TSI/Amrock's negotiations with HouseCanary over the scope of the agreement.  Many of these conversations were carried out by TSI/Amrock's then-Chief Appraiser Jordan Petkovski.  When Mr. Petkovski was let go in April 2016 – just before TSI/Amrock abruptly terminated the HouseCanary contract – Quicken Loans' CEO, Bill Emerson responded as if Petkovski was a Quicken Loans employee. He asked TSI/Amrock's CEO Jeff Eisenshtadt, "What does he really do for us today?" Mr. Emerson asked if there were "[a]ny other changes I should be aware of" and noted, "[w]e should remind [Petkovski] of his post employment obligations."

90.    Jeff Eisenshtadt testified further that when HouseCanary and TSI/Amrock had their two day kick-off meeting after the Amended MSLA was signed in November 2015, that TSI/Amrock was there "on behalf of" Quicken Loans.

### C. Defendants Obtained HouseCanary's Confidential Information and Used it to Develop Competing Appraisal Products for Use by the FOC

91.     With confidentiality restrictions in place and Quicken Loans' and TSI/Amrock's representations that they were not building their own valuation products, HouseCanary provided extensive data and insight into its models. TSI/Amrock, in cooperation with Quicken Loans and In-House Realty, wasted no time warehousing HouseCanary's Value Reports, compiling the information HouseCanary provided about its products and algorithms, and reverse engineering those algorithms to develop the internal AVM and other models, all in contravention of their commitments and oral agreements and assurances.  For example:

- HouseCanary shared "information regarding the property attributes and score" with TSI/Amrock data modeler, Ryan Yang.  That data modeler was and had been working on the TSI/Amrock AVM for months, and was also working on a similarity score and complexity score for TSI/Amrock.  Ryan Yang reported to Lucy Liu, a Quicken Loans (not TSI/Amrock) employee.

- HouseCanary made a "proprietary and confidential" presentation to TSI/Amrock on its Appraisal Complexity API, and on how it built the model and its functions.

- In 2015, an TSI/Amrock data modeler had developed code that integrated HouseCanary's information.  He sent that code to a Quicken Loans modeler.

- Promptly upon signing the MSA Amendment One, TSI/Amrock began downloading thousands of Value Reports per day from HouseCanary.  Indeed, TSI/Amrock continued to generate thousands of Value Reports even after TSI/Amrock filed the State Court Lawsuit and, in breach of applicable notice provisions, purported to terminate the parties' agreement.  In February 2016, an In-House Realty ("IHR") employee asked TSI/Amrock how close they were to IHR being able to use HouseCanary data – despite the fact that IHR had *no rights* under the MSA Amendment One.  TSI/Amrock's Chief Appraiser, Jordan Petkovski directed the project managers for the HouseCanary project to send a copy of HouseCanary's proprietary Value Report over to IHR.

- In February 2016, TSI/Amrock hosted a meeting with Quicken Loans to discuss "next steps… to leverage the data from HC *further* after the Banking deliverable is implemented" for Quicken Loans bankers.

- In February 2016, IHR requested an update from TSI/Amrock on HouseCanary.  In response, TSI/Amrock provided IHR with copies of the value report (to which IHR had no rights) to "review and markup."  Mr. Petkovski noted that IHR would be able to "plug into the API we're (TSI) developing for the FOC's use."

- In March 2016, TSI/Amrock modeler Tianqi Yang informed TSI/Amrock's Chief Information Officer that Quicken Loans' banking team was asking to access the HouseCanary AVM data stored in TSI/Amrock's *modeling* server.  This data was shared with Quicken Loans with TSI/Amrock's modeler noting the "magnitude of the data."

- In March 2016, HouseCanary provided TSI/Amrock with its "Appraisal complexity score."

- In late March, when TSI/Amrock demanded to restructure the agreement with HouseCanary to permit warehousing of its data (in clear violation of the existing agreement), there was a meeting with Quicken Loans to discuss the fact that "the requirements are changing on the TSI end."

- In April, 2016, Quicken Loans was demanding, through TSI/Amrock, additional information in the Value Report that TSI/Amrock had not contracted for.

- In June 2016, after TSI/Amrock abruptly terminated the agreement with HouseCanary and filed a lawsuit. TSI/Amrock's data science team – which included the modelers in charge of the HouseCanary project -- hosted a meeting with IHR stakeholders Doug Seabolt and Sam Vida to "review the current AVMs on the market," "review the statistical model we developed *in the last year*," and "show a demo of the initial TS AVM products."

- Quicken Loans and IHR were kept updated on TSI/Amrock's "AVM project development strategy and plan."

- In July 2016, Quicken Loans' Vice President of Business Intelligence discussed "opportunities for … TSI Modelers and [Quicken Loans Business Intelligence]" to collaborate on knowledge shares and projects to expand the breadth of the modeling expertise." Specifically, the plan was to combine the teams into one "comprised of the current modeling teams from QL and TSI; BIG Data engineering and Data Scientist from QL and the model deployment team from TSI."  The goal was to "shar[e] for advance analytics across the FOC."

- In September 2016, TSI/Amrock unveiled the Title Source AVM at the Quicken Loans Technology Conference, an internal conference for members of the FOC.   The presentation announced that the AVM would be primarily used by Quicken Loans bankers, IHR agents and TSI/Amrock appraisers.

- In November 2016, TSI/Amrock and Quicken Loans merged their "data science" teams – the teams tasked with developing valuation models, including the AVM.

- A white paper authored by TSI/Amrock/Quicken modeler Claude Wang offered insight into why "an accurate in-house Automated Valuation Model could leverage the FinTech and big data tools and greatly benefit *the Family of Companies (FOC)."*

- Specifically, TSI/Amrock anticipated using the TSI/Amrock AVM for Quicken Loans bankers who could use the TSI/Amrock AVM to demonstrate to clients the value of their homes.   TSI/Amrock also anticipated using the TSI/Amrock AVM for providing IHR agents with a comprehensive analysis of property and estimates of property value with a confidence range – exactly what HouseCanary's products do.

- TSI/Amrock's website in October 2017 stated that it is "proud to offer two innovative new products on our website: Our cascading Automated Value Model (AVM) and Value Preview (VP) products.  Similar to an appraisal, these products provide a Value Report on your residential property."

- Jeffrey Eisenshtadt, TSI/Amrock's CEO, has admitted that the TSI/Amrock AVM that was revealed in October 2016 at the Quicken Loans Technology conference is available to Quicken Loans and being used every day within the FOC.

- In February 2018, TSI/Amrock unveiled its new rebrand as Amrock, which boasts that it is a "FinTech" company at its core and a "leading-edge provider of Fin-Tech services." Such fin-tech services include offering AVM's and pricing models nationwide for public consumption.

- In the State Court Lawsuit, the jury found that TSI/Amrock breached its agreements with HouseCanary that limited its use of HouseCanary's data and technology. Quicken Loans, as TSI/Amrock's alter ego, is bound by these findings.

92.     Defendants were involved at every turn. Before the Amended MSLA was signed, TSI/Amrock's Head of Business Intelligence discussed "options for developing data products we can offer our clients using HouseCanary data … or models we can develop with their data."  He noted that "this is not a standalone … team…. They will need help from other teams like… QL."

93.      Even before the TSI/Amrock and Quicken Loans data science teams merged, TSI/Amrock's employees in charge of developing the internal valuation models using HouseCanary's intellectual property reported to Lucy Liu, a Quicken Loans employee.

94.     High-ranking Quicken Loans and IHR employees were considered "stakeholders" in the HouseCanary relationship and were included on weekly updates regarding the development and performance of the AVM model TSI/Amrock was developing.  They were actively involved in directing the project, determining data sources – including HouseCanary's data – and discussing potential business uses for the FOC.  In fact, Jeff Cymbalski, a Quicken Loans employee was a key member of the HouseCanary project team.

95.      Quicken Loans and IHR also held meetings with HouseCanary in 2016, to give the impression that they wanted to enter into additional agreements to *pay* for access to the data

and analytics they were already covertly using through the back channels of TSI/Amrock. During these meetings HouseCanary provided additional confidential information directly to Quicken Loans and IHR –pursuant to the NDA – based on the false representations that additional agreements would be entered into.

> **D.    Defendants' Theft of HouseCanary's Trade Secrets Was in Furtherance of a Rebrand of Quicken Loans Using HouseCanary's Trade Secrets**

96.     The timing of Defendants initiation of a plan, together with TSI/Amrock, to acquire HouseCanary's innovative valuation data and models was no coincidence.  It coincided with a growing realization that to stay dominant in an industry of thinning margins, intensifying competition, and increasing government oversight, the FOC would need to have a more efficient *and* more accurate mortgage process.[7]

97.     At a conference in 2018, Quicken Loans' Founder and Chairman Dan Gilbert observed: "Data will move faster and be more accurate…. If we don't get on the train, it's going to be over. Whoever can move faster on technology and invest time and effort in technology will succeed."  But Quicken Loans and TSI/Amrock invested no time and effort in developing their own technology – instead they used their dominance in the industry to take it from a start-up looking to make its mark.

**FIRST CAUSE OF ACTION**
**(Misappropriation of Trade Secrets —**
**TEX. CIV. PRAC. & REM. CODE §134A.001 *et seq*.)**
**(Against All Defendants)**

98.     HouseCanary hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 97 as though fully set forth herein.

---

[7] *8 Things We Learned at #MBATech18*, National Mortgage News (Apr. 18, 2018), https://www.nationalmortgagenews.com/slideshow/8-things-we-learned-at-mbatech18

99.    In the course of its dealings, HouseCanary provided access to valuable trade secrets related to its real estate data, analytics, and appraisal software to Quicken Loans through its affiliate TSI/Amrock.   Specifically, as part of HouseCanary's provision of services to TSI/Amrock and Quicken Loans (and pursuant to an NDA), HouseCanary shared trade secret information including, but not limited to:

- HouseCanary's AVMs
- HouseCanary's data dictionary
- HouseCanary's data compilations
- HouseCanary's similarity score
- HouseCanary's complexity score

("HouseCanary Trade Secrets.")

100.    Given the importance of the confidential information to HouseCanary, it was maintained with the highest degree of security pursuant to the company's robust policies. HouseCanary mandated that its customers enter into an NDA before providing them with any confidential or trade secret information – and TSI/Amrock did enter into such an NDA which also bound Defendants. The NDA includes requirements that the licensee not reverse-engineer HouseCanary products, data, or analytics in any way or use them beyond the scope of the NDA.

101.    The NDA TSI/Amrock signed promised that it would "not use the Confidential Information for a purpose other than for the stated Purpose of the Disclosure; and will not copy such information for a purpose other than for the stated Purpose of the Disclosure." NDA Section II(2)(A)(i). The NDA section II(2)(A)(v) requires TSI/Amrock "not to disassemble or decompile software, or otherwise attempt to reverse engineer the design and function of any of the Confidential Information, nor will it develop, manufacture, produce, and/or distribute any

software product or business derived from or which otherwise uses any of the Confidential Information."

102.    Defendants hid their conduct from HouseCanary.  As a result, in the event that any of the claims or causes of action brought by HouseCanary herein or yet to be brought herein are subject to an affirmative defense under a statute of limitations, the doctrines of fraudulent concealment and/or the discovery rule and/or equitable tolling are asserted and should be applied to toll the accrual of such claims or causes of action.

103.    Quicken Loans is also liable for TSI/Amrock's breach of the Amended MSLA, as found by a jury in San Antonio, because TSI/Amrock has been operated as a mere tool or business conduit of Quicken Loans.

104.    Specifically, Quicken Loans controls TSI/Amrock so that holding TSI/Amrock solely liable for its debts would result in an injustice.  Quicken Loans and TSI/Amrock share legal counsel, and comingle their funds in general and more specifically for paying for valuation services such as those provided by HouseCanary.

105.    Quicken Loans caused TSI/Amrock to enter into agreements with HouseCanary, and to make fraudulent statements to HouseCanary, so that Quicken Loans, through Title Source as a conduit, could gain access to HouseCanary's trade secrets.  Allowing Quicken Loans to hide behind the fiction of Title Source/TSI/Amrock would protect fraud by Quicken Loans and justify a wrong.

## SECOND CAUSE OF ACTION
**(Misappropriation of Trade Secrets Under the Defend Trade Secrets Act of 2016) (18. U.S.C. § 1836(b)(1))**
**(Against All Defendants)**

106.    Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully alleged herein.

107.    While working with its affiliate TSI/Amrock, Defendant Quicken Loans obtained access to Plaintiff HouseCanary's Trade Secrets.

108.    HouseCanary developed at great expense and owns the HouseCanary Trade Secret Information.   HouseCanary has kept confidential for use by the company the HouseCanary Trade Secret Information, which is information not generally known in the industry or publicly.

109.    The HouseCanary Trade Secret Information obtained by Defendant is related to Plaintiff's trade secrets and inventions that are used in or intended for use in interstate commerce.

110.    HouseCanary has taken reasonable steps as part of its ongoing operations to maintain the confidential nature of this information.   For example, all HouseCanary employees and customers are subject to confidentiality agreements.   HouseCanary documents are maintained on an internal system, and HouseCanary personnel are directed to work on HouseCanary-provided computers.

111.    Based on the trial testimony of TSI/Amrock CEO Jeffrey Eisenshtadt, Defendant Quicken Loans has used and is continuing to use HouseCanary's Trade Secret Information.   In doing so, Defendant is maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to its own advantage in competition with Plaintiff.   Based on information and belief, Quicken Loans has shared the misappropriated trade secrets with other

members of the Quicken Loans FOC, including Defendants In-House Realty and One Reverse Mortgage.

112.    As a result of Defendants' misappropriation and use of the confidential, proprietary, and trade secret information, Defendants have violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1).

113.    As a direct and proximate result of Defendants' violation of the Defend Trade Secrets Act of 2016, Plaintiff has sustained substantial damages in an amount that will be established at trial of this matter.

114.    Defendants' actions in converting and misappropriating Plaintiff's confidential, proprietary, and trade secret information for Defendants' own gain were willful, wanton, and malicious, and were taken with reckless disregard for the rights of Plaintiff.

115.    Defendants' actions have caused and will continue to cause Plaintiff irreparable harm if not preliminarily and permanently enjoined.

116.    Plaintiff has no adequate remedy at law.

117.    Quicken Loans is also liable for TSI/Amrock's breach of the Amended MSLA, as found by a jury in San Antonio, because TSI/Amrock has been operated as a mere tool or business conduit of Quicken Loans.

118.    Specifically, Quicken Loans controls TSI/Amrock so that holding TSI/Amrock solely liable for its debts would result in an injustice.  Quicken Loans and TSI/Amrock share legal counsel, and comingle their funds in general and more specifically for paying for valuation services such as those provided by HouseCanary.

119.    Quicken Loans caused TSI/Amrock to enter into agreements with HouseCanary, and to make fraudulent statements to HouseCanary, so that Quicken Loans, through Title Source

as a conduit, could gain access to HouseCanary's trade secrets.  Allowing Quicken Loans to hide behind the fiction of Title Source/TSI/Amrock would protect fraud by Quicken Loans and justify a wrong.

**THIRD CAUSE OF ACTION**
**(Joint Enterprise Liability for Misappropriation of Trade Secrets)**
**(Against All Defendants)**

120.    HouseCanary hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 119 as though fully set forth herein.

121.    TSI/Amrock, Quicken Loans, One Reverse Mortgage, and In-House Realty have an express agreement to share services, including valuation services and legal services.

122.    In early 2015, TSI/Amrock and Defendants agreed that the FOC would benefit from having internal valuation models that they could use internally and market to outside clients, rather than continuing to use third party services.

123.    TSI/Amrock and Defendants, recognizing that they did not have the resources to efficiently develop internal valuation models, agreed to contract with HouseCanary for its innovative valuation models and data, and use those models and data to develop the internal products for use by the FOC, on a shorter timeline. In other words, Defendants and TSI/Amrock agreed to misappropriate HouseCanary's trade secrets.

124.    TSI/Amrock and Defendants jointly carried out this plan through two contracts with HouseCanary, as well as numerous meetings over the course of the TSI/Amrock-HouseCanary relationship, during which Quicken Loans and In-House Realty requested additional data and proprietary information from HouseCanary, pursuant to an NDA that bound all Defendants.

COMPLAINT

125.     Behind the scenes, TSI/Amrock's and Quicken Loans' data science teams were working to reverse engineer HouseCanary's models (in particular its AVM) and develop competing products.   TSI/Amrock and Quicken Loans merged their data science teams in furtherance of this end.

126.     It was widely recognized across the FOC that the entire FOC would benefit financially from developing an AVM using HouseCanary's models and data.

127.     Quicken Loans and In-House Realty had at least an equal voice in the development and implementation of this plan.   Specifically, individuals at Quicken Loans and In-House Realty directed TSI/Amrock on the scope of the agreement with HouseCanary, and what information and data was needed from HouseCanary.   Quicken Loans and In-House Realty also directly communicated certain requests to HouseCanary in meetings during the relationship.

128.     The purpose and effect of this agreement between TSI/Amrock and Defendants was to misappropriate HouseCanary's trade secrets, in violation of state and federal trade secret law, and the NDA between HouseCanary, TSI/Amrock, and any TSI/Amrock affiliate.

### FOURTH CAUSE OF ACTION
**(Conspiracy to Misappropriate Trade Secrets)**
**(Against All Defendants)**

129.     HouseCanary hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 128 as though fully set forth herein.

130.     In early 2015, TSI/Amrock and Defendants agreed that the FOC would benefit from having internal valuation models that they could use internally and market to outside clients, rather than continuing to use third party services.

131.   TSI/Amrock and Defendants, recognizing that they did not have the resources to efficiently develop internal valuation models, agreed to misappropriate HouseCanary's trade secrets.

132.   Specifically, TSI/Amrock and Defendants agreed that TSI/Amrock would enter into a contract with HouseCanary to license its innovative valuation models and data, and pay for only limited rights of use by TSI/Amrock, Quicken Loans and One Reverse Mortgage. Secretly, however, TSI/Amrock used those models and data to develop the internal products for use by the FOC, on a shorter timeline – a purpose expressly forbidden by the contract and the NDA incorporated therein.

133.   Behind the scenes, TSI/Amrock's and Quicken Loans' data science teams were working to reverse engineer HouseCanary's models (in particular its AVM) and develop competing products.   TSI/Amrock and Quicken Loans merged their data science teams in furtherance of this end.

134.   As a result of the unlawful conduct of TSI/Amrock and Defendants in using HouseCanary's confidential information for unlawful purposes Plaintiff incurred substantial damages in an amount that will be established at trial of this matter.

## FIFTH CAUSE OF ACTION
### (Breach of Contract: Breach of the MSLA)
### (Against All Defendants)

135.   HouseCanary hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 134 as though fully set forth herein.

136.   HouseCanary and TSI/Amrock entered into a valid, binding contract when they executed the MSLA in January 2015.  HouseCanary performed under the MSLA by sharing its confidential information with the defendants and abiding by the terms of the MSLA.

137.   The MSLA incorporated by reference a valid, binding Non-Disclosure Agreement, executed by HouseCanary and TSI/Amrock in December 2013. The NDA expressly bound all of TSI/Amrock's affiliates to the extent they received any of HouseCanary's confidential information.

138.   HouseCanary performed under the NDA by sharing its confidential information with the defendants and abiding by the terms of the NDA.

139.   The Defendants materially breached the MSLA, which incorporated the NDA, by using the confidential information given to them by HouseCanary for their own purposes, as detailed above.  Defendants did so with knowledge of the confidentiality terms of the MSLA, incorporating the NDA.

140.   Quicken Loans is also liable for TSI/Amrock's breach of the MSLA, as found by a jury in San Antonio, because TSI/Amrock has been operated as a mere tool or business conduit of Quicken Loans.

141.   Specifically, Quicken Loans controls TSI/Amrock so that holding TSI/Amrock solely liable for its debts would result in an injustice.  Quicken Loans and TSI/Amrock share legal counsel, and comingle their funds in general and more specifically for paying for valuation services such as those provided by HouseCanary.

142.   Quicken Loans caused TSI/Amrock to enter into agreements with HouseCanary, and to make fraudulent statements to HouseCanary, so that Quicken Loans, through Title Source as a conduit, could gain access to HouseCanary's trade secrets.  Allowing Quicken Loans to hide behind the fiction of Title Source/TSI/Amrock would protect fraud by Quicken Loans and justify a wrong.

143.     Defendants' use of HouseCanary's confidential information for their own purposes has caused Plaintiff substantial damages in an amount that will be established at trial of this matter.

## SIXTH CAUSE OF ACTION
### (Breach of Contract: Breach of the Amended MSLA)
### (Against All Defendants)

144.     HouseCanary hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 143 as though fully set forth herein.

145.     HouseCanary and TSI/Amrock entered into a valid, binding contract when they executed the Amended MSLA in November 2015.  HouseCanary performed under the Amended MSLA by sharing its confidential information with the defendants and abiding by the terms of the Amended MSLA.

146.     The Amended MSLA incorporated by reference a valid, binding Non-Disclosure Act, executed by HouseCanary and TSI/Amrock in December 2013. The NDA expressly bound all of TSI/Amrock's affiliates to the extent they received any of HouseCanary's confidential information.

147.     In addition, Defendants Quicken Loans and One Reverse Mortgage are named third-party beneficiaries to the Amended MSLA.  At all times Quicken Loans and One-Reverse Mortgage were aware of and subject to the confidentiality provisions of the Amended MSLA, including but not limited to the terms of the NDA expressly binding all Defendants, and the additional confidentiality restrictions contained in the Amended MSLA.

148.     The defendants materially breached the Amended MSLA by using the confidential information given to them by HouseCanary for their own purposes, as detailed above in violation of the NDA, incorporated into the Amended MSLA, and in violation of the

terms of the Amended MSLA itself – which bound the third-party beneficiaries Quicken Loans and One Reverse Mortgage.  Defendants did so with knowledge of the confidentiality terms of the Amended MSLA.

149.    Quicken Loans is also liable for TSI/Amrock's breach of the Amended MSLA, as found by a jury in San Antonio, because TSI/Amrock has been operated as a mere tool or business conduit of Quicken Loans.

150.    Specifically, Quicken Loans controls TSI/Amrock so that holding TSI/Amrock solely liable for its debts would result in an injustice.  Quicken Loans and TSI/Amrock share legal counsel, and comingle their funds in general and more specifically for paying for valuation services such as those provided by HouseCanary.

151.    Quicken Loans caused TSI/Amrock to enter into agreements with HouseCanary, and to make fraudulent statements to HouseCanary, so that Quicken Loans, through Title Source as a conduit, could gain access to HouseCanary's trade secrets.  Allowing Quicken Loans to hide behind the fiction of Title Source/TSI/Amrock would protect fraud by Quicken Loans and justify a wrong.

152.    Defendants' use of HouseCanary's confidential information for their own purposes has caused Plaintiff substantial damages in an amount that will be established at trial of this matter.

### SEVENTH CAUSE OF ACTION
**(Conspiracy to Commit Fraud and Fraudulent Inducement)**
**(Against All Defendants)**

153.    HouseCanary hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 152  as though fully set forth herein.

154.    TSI/Amrock, Quicken Loans, In-House Realty, and One Reverse Mortgage had the objective of obtaining the most accurate data and valuation models to use freely within the FOC and to market to third parties as Quicken Loans' own internal products.

155.    However, TSI/Amrock and Defendants did not have the necessary resources (time or talent) to develop accurate valuation models, or acquire the best data efficiently – to do so would have taken years, and Quicken Loans and TSI/Amrock wanted to rebrand as a data company immediately.

156.    In order to achieve Defendants' (and TSI/Amrock's) shared objective, they agreed that TSI/Amrock and Quicken Loans would acquire HouseCanary's data and valuation models and use them and market them as TSI/Amrock's own property for use by the FOC and third parties.

157.    In furtherance of that goal, Quicken Loans directed TSI/Amrock to enter into a licensing agreement with HouseCanary to license its data and innovative valuation models, including HouseCanary's Automated Valuation Model ("AVM").

158.    In order to obtain a license to HouseCanary's intellectual property, TSI/Amrock made numerous false representations: (1) it signed an NDA stating that neither it nor its affiliates (Defendants) would not ***disassemble or decompile software, or otherwise attempt to reverse engineer*** … the Confidential Information, nor … ***develop,*** … any ***software product or business derived from or which otherwise uses any of the Confidential Information***; (2) it made verbal representations that TSI/Amrock and Quicken Loans were not in the business of creating their own valuation models.

159.    TSI/Amrock made these representations knowing that it intended to reverse engineer HouseCanary's models, warehouse HouseCanary's data, and use it to create an internal valuation model for the FOC.

160.    TSI/Amrock made these representations intending that HouseCanary would rely on them, and knowing that without them, HouseCanary would not agree to a licensing agreement, and would not provide confidential information about its models to TSI/Amrock, Quicken Loans, In-House Realty or One Reverse Mortgage.  Furthermore, TSI/Amrock made these representations in furtherance of Defendants' shared goal of obtaining this confidential information.

161.    HouseCanary justifiably relied on TSI/Amrock's representations about how it, and its affiliates, the Defendants would use HouseCanary's confidential information. HouseCanary was injured when it made its confidential information available to TSI/Amrock, Quicken Loans, In-House Realty and One Reverse Mortgage, and that information was misappropriated for the benefit of the FOC.

162.    In addition, throughout the term of the MSLA and Amended MSLA Quicken Loans and In-House Realty continued to meet and communicate with HouseCanary and obtain access to its confidential information, under the guise of wanting to enter into an additional agreement to license HouseCanary' data and valuation models beyond the scope of the Amended MSLA.  In truth, Defendants had no intention of entering into any additional agreement or paying HouseCanary more for expanded rights.  To the contrary, Defendants intended to terminate the TSI/Amrock agreement as soon as they had what they needed.

163.    Defendants' use of HouseCanary's confidential information, unlawfully obtained by TSI/Amrock, Quicken Loans, and In-House Realty, for their own purposes has caused Plaintiff substantial damages in an amount that will be established at trial of this matter.

164.    Quicken Loans is also liable for TSI/Amrock's individual fraud and fraudulent inducement, as found by a jury in San Antonio, because TSI/Amrock has been operated as a mere tool or business conduit of Quicken Loans.

165.    Specifically, Quicken Loans controls TSI/Amrock so that holding TSI/Amrock solely liable for its debts would result in an injustice.  Quicken Loans and TSI/Amrock share legal counsel, and comingle their funds in general and, more specifically for paying for valuation services such as those provided by HouseCanary.

166.    Quicken Loans caused TSI/Amrock to enter into agreements with HouseCanary, and to make fraudulent statements to HouseCanary, so that Quicken Loans, through Title Source as a conduit, could gain access to HouseCanary's trade secrets.  Allowing Quicken Loans to hide behind the fiction of Title Source/TSI/Amrock would protect fraud by Quicken Loans and justify a wrong.

## **PRAYER FOR RELIEF**

WHEREFORE, HouseCanary prays for judgment against Quicken Loans Inc., One Reverse Mortgage and In-House Realty as follows:

1.    Compensatory damages, plus interest and prejudgment interest in an amount to be determined at trial;

2.    Other economic and consequential damages in an amount to be determined at trial;

3.      Preliminary and permanent injunctive relief to prevent use by the Defendants of any trade secrets belonging to HouseCanary in any way, including in developing, designing or machine training any real estate appraiser or analytic technology or products;

4.      Preliminary and permanent injunctive relief to prevent use by the Defendants of any trade secrets belonging to HouseCanary;

5.      Preliminary and permanent injunctive relief to prevent use by the Defendants of AVMs, appraisal softwares or any valuation models derived directly or indirectly through use of HouseCanary trade secrets;

6.      Restitution of all profits made by Defendants, in the past and future, as a result of having engaged in the wrongful conduct which has or will damage Plaintiff;

7.      Attorneys' fees, witness fees and the costs of the litigation incurred by HouseCanary in an amount to be determined at trial;

8.      For the costs of the suit incurred herein; and

9.      For such other and further relief as the Court deems just and proper.

DATED:   May 25, 2018.

Respectfully submitted,


*/s/ Max L. Tribble, Jr.*
Max L. Tribble, Jr.
Texas Bar No. 20213950
Matthew C. Behncke *
Texas Bar No. 24069355
Rocco Magni *
Texas Bar No. 24092745
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
mtribble@susmangodfrey.com
mbehncke@susmangodfrey.com
rmagni@susmangodfrey.com

Kalpana Srinivasan *
California Bar No. 237460
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com

Elisha Barron *
New York Bar No. 5036850
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
ebarron@susmangodfrey.com

*  pending admission pro hac vice

_____

Ricardo G. Cedillo
Texas Bar No. 04043600
DAVIS, CEDILLO & MENDOZA,  INC.
755 E. Mulberry Ave., Suite 500
San Antonio, TX 78212
Telephone: (210) 822-6666
Facsimile: (210) 822-1151
rcedillo@lawdcm.com

ATTORNEYS FOR PLAINTIFF
HOUSECANARY, INC.